## Terre Haute & Logansport Railway Company *v.* Salmon.

[No. 19,905. Filed June 19, 1903.]

RAILROADS.—*Fences.*—*Failure to Construct.*—*Construction by Landowner.* —*Penalty.*—*Attorney's Fees.*—*Police Power.*—The provision of §§5324 Burns 1901, authorizing the recovery of attorney's fees in addition to the value of the fence constructed by an adjoining landowner along a railroad right of way is not unconstitutional.

From Clinton Circuit Court; *J. V. Kent*, Judge.

Action by James W. Salmon against the Terre Haute & Logansport Railway Company. From a judgment in favor of plaintiff, defendant appeals. *Affirmed.*

*C. G. Guenther, Braden Clark* and *J. G. Williams*, for appellant.

*Joseph Combs*, for appellee.

MONKS, C. J.—This action was brought by appellee against appellant to recover for labor and material used in constructing a fence along the right of way of appellant's railroad where the same abuts on appellee's land, and attorney's fees, under §§5323-5325 Burns 1901. Appellee recovered judgment for the value of the fence and attorney's fees as provided in said sections.

Appellant asks for a reversal of said judgment as to attorney's fees on the ground that the provision of said sections which authorizes the recovery of attorney's fees, in addition to the value of the fence, is in violation of the fourteenth amendment of the Constitution of the United States, and of §§12 and 22, article 1, of the Constitution of this State, and therefore void. Said §§5323-5325, *supra*, provide that railway companies must fence their tracks where they can be fenced, specifying the kind of fence required, and, upon their neglect or failure to do so, give the owner of real estate adjoining the right of way the right, after giving thirty days' notice of his intention to do so, to build or repair the same, and collect the expense thereof, including material and labor, together with reasonable attorney's fees. Other sections make railroad companies liable to the owners of stock killed or injured by the locomotive, cars, or other carriages run on such railroad in this State, not securely fenced in, without regard to the question of negligence. §§5312-5318 Burns 1901; *Indianapolis, etc., R. Co.* v. *Parker,* 29 Ind. 471. These statutes were passed by the legislature, in the exercise of the police power, to compel railroad companies to fence their tracks, and are for the protection of persons and property carried upon railroads.

It is the undoubted right of the legislature, in the exercise of the police power, not only to require all railroad companies within the limits of its jurisdiction to inclose their roads with suitable and sufficient fences, as a matter of public safety, but also to impose penalties for failure

to perform such duty. Such penalties may be in the shape of double the actual damages suffered, double costs, attorney's fees, and absolute liability in case of injury to animals. Such laws are enacted to compel railroad companies to fence their right of way, and thus protect persons and property passing on the railroad, and are not in violation of any of the constitutional provisions mentioned by appellant. Cooley, Const. Lim. (6th ed.), 712, 713; Elliott, Railroads, §§669, 1219, 1220, and cases cited; 12 Am. & Eng. Ency. Law, 1075, 1076, and cases cited; Thornton, Railroad Fences, §§14, 15, 19; *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *Missouri Pac. R. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Minneapolis, etc., R. Co.* v. *Beckwith,* 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; *Minneapolis, etc., R. Co.* v. *Emmons,* 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; *Indianapolis, etc., R. Co.* v. *Parker, supra; Indianapolis, etc., R. Co.* v. *McKinney,* 24 Ind. 283; *Indianapolis, etc., R. Co.* v. *Kercheval,* 16 Ind. 84; *Indianapolis, etc., R. Co.* v. *Townsend,* 10 Ind. 38; *Cairo, etc., R. Co.* v. *Peoples,* 92 Ill. 97; *Peoria, etc., R. Co.* v. *Duggan,* 109 Ill. 537, 50 Am. Rep. 619; *Johnson* v. *Chicago, etc., R. Co.,* 29 Minn. 425, 13 N. W. 673; *Perkins* v. *St. Louis, etc., R. Co.,* 103 Mo. 52, 15 S. W. 320, 11 L. R. A. 426; *Briggs* v. *St. Louis, etc., R. Co.,* 111 Mo. 168, 172, 173, 20 S. W. 32; *Railroads* v. *Crider,* 91 Tenn. 489, 19 S. W. 618, and cases cited; *Kansas Pac. R. Co.* v. *Mower,* 16 Kan. 573, and cases cited; *Hopkins* v. *Kansas Pac. R. Co.,* 18 Kan. 462; *Atchison, etc., R. Co.* v. *Harper,* 19 Kan. 529; *Missouri, etc., R. Co.* v. *Shirley,* 20 Kan. 660, and cases cited; *Jacksonville, etc., R. Co.* v. *Prior,* 34 Fla. 271, 283, 284, 15 South. 760.

It was held by the Supreme Court of the United States in *Minneapolis, etc., R. Co.* v. *Beckwith, supra,* that §1289 of the code of Iowa, which authorized the recovery of "double

the value of stock killed or damages done thereto" by a railroad when the injury took place at a point on the road where it was the duty of the corporation to erect a fence, and it failed to do so, is not in conflict with the fourteenth amendment of the Constitution of the United States, either as depriving the corporation of its property without due process of law, or as denying it the equal protection of the law. The court said at page 31: "In *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512, 523, a statute of Missouri requiring every railroad corporation within it to erect and maintain fences and cattle-guards on the sides of its roads, where the same passed through, along, or adjoining inclosed or cultivated fields or uninclosed lands, and, if it did not, making it liable in double the amount of damages to animals caused thereby, was assailed as in conflict with the fourteenth amendment, on the same grounds urged in the present case, namely, that it deprived the defendant of property without due process of law, so far as it allowed a recovery of damages for stock killed or injured in excess of its value, and also that it denied to the defendant the equal protection of the laws, by imposing upon it a liability for injuries committed which was not imposed upon other persons. But the court said that authority for requiring railroads to erect fences on the sides of their roads, so as to keep horses, cattle, and other animals from going upon them, was found in the general police power of the state to provide against accidents to life and property in any business or employment, whether under the charge of private persons or of corporations; that in few instances could that power be more wisely or beneficently exercised than in compelling railroad corporations to inclose their roads with fences having gates at crossings, and cattle-guards; that they are absolutely essential to give protection against accidents in thickly settled portions of the country; that the omission to erect and maintain them, in the face of the law, would

justly be deemed gross negligence; and that, if injuries to property are committed, something beyond compensatory damages might be awarded in punishment of it.    Referring to the rule which prevails of allowing juries to assess exemplary or punitive damages where injuries have resulted from neglect of duties, the court said: 'The statutes of nearly every state of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages.    And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries.    The decisions of the highest courts have affirmed the validity of such legislation.    The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages.'    And as to the objection that the statute of Missouri denied to the defendant the equal protection of the laws, the court said that it made no discrimination against any railroad company in its requirement; that each company was subject to the same liabilities, and from each the same security was exacted by the erection of fences, gates and cattle-guards, when its road passed through, along, or adjoining inclosed or cultivated fields or uninclosed lands; and that there was no evasion of the rule of equality where all companies are subjected to the same duties and liabilities under similar circumstances.    *    *    *    From these adjudications it is evident that the fourteenth amendment does not limit the subjects in relation to which the police power of the state may be exercised for the protection of its citizens.    That this power should be applied to railroad companies is reasonable and just.    The tremendous force brought into action in running railroad cars renders it

absolutely essential that. every precaution should be taken against accident by collision, not only with other trains, but with animals. A collision with animals may be attended with more serious injury than their destruction; it may derail the cars and cause the death or serious injury of passengers. Where these companies have the right to fence in their tracks, and thus secure their roads from cattle going upon them, it would seem to be a wise precaution on their part to put up such guards against accidents at places where cattle are allowed to roam at large. The statute of Iowa in fixing an absolute liability upon them for injuries to cattle, committed in the operation of their roads by reason of the want of such guards, would seem to treat this precaution as a duty. It is true that, by the common law, the owner of land was not compelled to inclose it, so as to prevent the cattle of others from coming upon it, and it may be that, in the absence of legislation on the subject, a railway corporation is not required to fence its railway, the common law as to inclosing one's land having been established long before railways were known. But the obligation of the defendant railway company to use reasonable means to keep its track clear, so as to insure safety in the movements of its trains, is plainly implied by the statute of Iowa, which also indicates that the putting up of fences would be such reasonable means of safety. If, therefore, the company omits those means, the omission may be well regarded as evidence of such culpable negligence as to justify punitive damages where injury is committed; and if punitive damages in such cases may be given, the legislature may prescribe the extent to which juries may go in awarding them."

In *Perkins* v. *St. Louis, etc., R. Co.*, 103 Mo. 52, 15 S. W. 320, 11 L. R. A. 426, the provision authorizing the recovery of attorney's fees by the plaintiff in actions for stock killed by reason of the failure of the defendant to fence the railroad track was sustained as a valid exercise

of the police power.   The court said at page 57:   "Our statute giving the owner double damages for stock killed, where a railroad is not fenced as required by law, has been upheld in several cases on the ground that the law is a police regulation and designed not only to protect the owners of the stock, but also the traveling public, and that the legislature might impose a penalty for a violation of the law and give the penalty to the owner of the stock killed.   *Barnett* v. *Atlantic, etc., R. Co.*, 68 Mo. 56, and cases cited; *Cummings* v. *St. Louis, etc., R. Co.*, 70 Mo. 570; *Spealman* v. *Missouri Pac. R. Co.*, 71 Mo. 434; *Humes* v. *Missouri Pac. R. Co.*, 82 Mo. 221.   The statute in question is as much a police regulation as is the double-damage section, and the attorney's fee may be lawfully imposed as a penalty for the violation of the law.   It is a penalty allowed in all cases of a class, and the objection that the law is special legislation is not well taken."

In *Briggs* v. *St. Louis, etc., R. Co.*, 111 Mo. 168, 20 S. W. 32, the court cited with approval the case of *Perkins* v. *St. Louis, etc., R. Co., supra,* and said: "The fee allowed is in the nature of a penalty or as exemplary damages, imposed as a punishment for the negligent and wilful disregard of the requirements of the statute.   Upon these grounds alone its constitutionality has been upheld.   *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512, 522; *Perkins* v. *St. Louis, etc., R. Co.*, 103 Mo. 52."

In *Gulf, etc., R. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, an action was brought to recover for a colt killed by the railway company, and attorney's fees, as provided by a statute of the state of Texas.   There was no statute in that state making it the duty of railroads to fence their tracks, and the court held that said statute was in violation of the equality clause of the fourteenth amendment of the Constitution of the United States.   The court said: "But if the classification is not based upon the idea of special privileges, can it be sustained upon

the basis of the business in which the corporations to be punished are engaged? That such corporations may be classified for some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves; and any classification for the imposition of such special duties—duties arising out of the peculiar business in which they are engaged—is a just classification, and not one within the prohibition of the fourteenth amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence, double damages in case of loss are inflicted. *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512, 6 Sup. Ct. 110, 29 Ed. 463. But this and all kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged—a duty not resting upon others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the state, or by double damages to the party injured, is immaterial. It is all done in the exercise of the police power of the state and with a view to enforce just and reasonable police regulations. While this action is for stock killed, the recovery of attorney's fees can not be sustained upon the theory just suggested. There is no fence law in Texas. The legislature of the state has not deemed it necessary for the protection of life or property to require railroads to fence their tracks, and as no duty is imposed, there can be no penalty for nonperformance. Indeed, the statute does not proceed upon any such theory. It is broader in its scope. Its object is to compel the payment of the several classes

of debts named, and was so regarded by the supreme court of the state."

The court in *Gulf, etc., R. Co.* v. *Ellis, supra,* expressly recognized and affirmed the rule declared in the authorities heretofore cited. The attorney's fee in an action to recover for the value of the fence constructed by the adjoining landowner is in the nature of a penalty or damages imposed by the legislature as a punishment for the negligent and wilful failure of the railroad company to erect said fences as required by the statute, and to compel them to construct the same. It is clear, therefore, that under the rules declared in the cases cited, the clause in regard to attorney's fees is not in violation of the fourteenth amendment of the Constitution of the United States, or any provision of the Constitution of this State. See, also, *Farmers, etc., Ins. Co.* v. *Dobney,* 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 821, s. c. 62 Neb. 213, 86 N. W. 1070; *Union, etc., Ins. Co.* v. *Chowning,* 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504; *Atchison, etc., R. Co.* v. *Matthews,* 58 Kan. 447, 450, 49 Pac. 602. There may be a few states where the courts hold otherwise, but the weight of authority clearly sustains the views expressed in this opinion. Elliott, Railroads, §1220.

Judgment affirmed.